**STATE of Minnesota, Respondent,**

v.

**David FEDOR, Appellant.**

No. C2–00–1445.

Court of Appeals of Minnesota.

May 15, 2001.

Mike Hatch, Attorney General, St. Paul; and Robert M.A. Johnson, Anoka County Attorney, Robert D. Goodell, Assistant County Attorney, Anoka, for respondent.

Simcha Plisner, St. Paul, for appellant.

Considered and decided by TOUSSAINT, C.J., ANDERSON, and PORITSKY,* JJ.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

## OPINION

TOUSSAINT, Chief Judge

Appellant appeals from an order denying a postconviction petition challenging his conviction for second-degree criminal sexual conduct. Appellant alleges that (1) newly-discovered evidence entitles him to a new trial; (2) his trial counsel was ineffective; (3) the trial court erred by not returning the jury to the courtroom before denying their request for the entire transcript; and (4) the trial court erred in limiting defense expert testimony on suggestibility. Because (1) there was no new evidence; (2) trial counsel was effective; (3) the jury's request was not specific; and (4) expert testimony may be limited, the trial court did not err. We affirm.

## FACTS

Appellant David Fedor was convicted in 1998 on two counts of criminal sexual conduct in the first and second degrees for sexually abusing of C.M.K., the seven-year old daughter of his live-in girlfriend, in the fall of 1993. A first-degree charge was vacated prior to sentencing.

C.M.K. testified that the abuse occurred after she returned home from a second grade school trip to Como Park. C.M.K. did not report the abuse until she was interviewed by Patrick Price, a nurse practitioner, regarding an unrelated abuse situation involving a friend and cousin in 1998. C.M.K. testified that she did not report the abuse because (1) she did not know what her mother would say; (2) Fedor moved out shortly after the incident; and (3) she just wanted to try to forget about it.

As a result, Price reported the incident to the authorities in Anoka County. Investigator Michael Sommer then conduct-

appointment pursuant to Minn. Const. art. VI, § 10.

ed a videotaped interview of C.M.K. regarding her story. Fedor was charged with three counts of criminal sexual conduct.

During trial, Fedor attempted to present the testimony of Dr. Charles Underwager to explain the theory of suggestibility and how it applies to a victim who is repeatedly interviewed. But, outside the presence of the jury, the trial court narrowed the admissibility of his testimony to general interviewing techniques. Dr. Underwager was going to base his testimony on the videotaped interview that the trial court ruled was inadmissible upon a motion in limine. The trial court noted that if Dr. Underwager testified regarding the videotaped interview, then the trial court would allow the jury to view the videotape to clarify the substance of Dr. Underwager's testimony. The trial court repeated this ruling to Fedor's counsel, so that she would understand exactly what it was going to allow in as evidence. Also, the trial court noted that Dr. Underwager would be sanctioned if he attempted to present testimony that was previously ruled inadmissible by the trial court. The trial court determined that it was for the jury, as opposed to an expert, to determine C.M.K.'s credibility.

During jury deliberations, the jury requested a copy of the entire 200–page transcript. Without recalling the jury to the courtroom and in the presence of both counsels in chambers, the trial court submitted a written response to the jury. The trial court denied the request and stated that the jury needed to rely on their own recollection of the testimony. After four hours of deliberations, the jury returned a guilty verdict.

Fedor retained new counsel and submitted motions for a new trial. Those motions were denied. Upon an appeal of his conviction, this court (1) remanded the case for a postconviction hearing on the issue of ineffective assistance of counsel; (2) did not preclude a later appeal from a postconviction order; and (3) did not limit the issues that could be raised in that appeal.

Subsequently, Fedor's petition for postconviction relief was denied. The postconviction court found that Fedor's prior counsel was reasonably effective, and even if ineffective, the result would probably have been the same.

Fedor appeals from both denials of his motions for a new trial and his petition for postconviction relief.

## ISSUES

I. Did the postconviction court abuse its discretion when it denied a new trial based on newly discovered evidence?

II. Did the postconviction court abuse its discretion when it denied appellant's ineffective assistance of counsel claim?

III. Did the trial court err when it denied, in writing, the jury's request to review the complete trial transcript without returning the jury to the courtroom?

IV. Did the trial court err when it restricted the expert's testimony and by its treatment of appellant's expert and counsel?

## ANALYSIS

This court reviews a postconviction proceeding only to determine whether the evidence is sufficient to sustain the postconviction court's findings and will affirm the postconviction court's decision absent an abuse of discretion. *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn.1992). The petitioner's allegations must be more than argumentative assertions without factual support. *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995).

A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which would warrant a reopening of the case.

*State v. Warren*, 592 N.W.2d 440, 449 (Minn.1999) (quotation omitted).

### I.

■ Newly discovered evidence entitles a petitioner to postconviction relief and a new trial only if four elements are met: (1) the evidence was not known to the petitioner or counsel at the time of trial; (2) the evidence could not have been discovered through due diligence before trial; (3) the evidence is not cumulative, impeaching, or doubtful; and (4) the evidence probably would produce an acquittal or a more favorable result. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997).

■ Fedor argues that a new trial is warranted because there is now new evidence that there was no field trip to Como Park prior to the incident. We disagree. First, the evidence concerning the field trip was disclosed to Fedor during the investigation and in the complaint. Secondly, upon due diligence, both Fedor and his counsel could have discovered the information about the field trip. In fact, counsel testified during the ineffective assistance of counsel phase of the postconviction hearing that the information was not sought because of lack of funds for investigation. Thirdly, the newly discovered evidence was used for impeachment purposes only and not as an alibi. Finally, it is speculative at best that the information regarding the field trip would have any impact on the jury when it only related to an event preceding the actual criminal conduct by Fedor. Even if the evidence had been presented, the jury could have found that C.M.K. was very consistent with her story regarding when, where and how the

abuse occurred. Therefore, the trial court did not err in denying a new trial based on this newly discovered evidence.

■■ Fedor also argues that the newly discovered information regarding the field trip shows that C.M.K. presented false and perjured testimony. But, Fedor did not argue this in the prior proceedings. This court will generally not consider matters not argued and considered in the court below. *Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996).

Fedor also argues that there is newly discovered evidence about the state's witness, Patrick Price, and that his testimony was fraudulent and misleading. Specifically, Fedor argues that Price's professional qualifications could be called into question. This argument fails. As the record indicates, Price's testimony was presented for the sole purpose of corroborating of C.M.K.'s story. Price testified as a mandated reporter of the crime, not as an expert. Furthermore, Price's qualifications could have only been used for impeachment purposes.

For these reasons, the trial court did not err in denying Fedor's motion for a new trial based on newly discovered evidence.

### II.

■ Fedor argues that he was entitled to a new trial because his counsel was ineffective.

To prevail on a claim of ineffective assistance of counsel, [defendant] must affirmatively show that his attorney's representation fell below an objective standard of reasonableness and so prejudiced him that there is a reasonable probability that, but for counsel's errors, the trial outcome would have been different.

*State v. Anderson*, 603 N.W.2d 354, 357 (Minn.App.1999) (citation omitted).

Fedor argues that his counsel failed to (1) investigate impeachment evidence against C.M.K.; (2) investigate credentials of the witnesses; and (3) familiarize herself with the law regarding expert testimony before advising Fedor to waive his expert's testimony. When determining whether counsel's representation fell below an objective standard of reasonableness,

> [a] strong presumption exists that counsel's performance fell within a wide range of reasonable assistance. Particular deference is given to the decisions of counsel regarding trial strategy.

*State v. Lahue,* 585 N.W.2d 785, 789 (Minn.1998) (citation omitted). "What evidence to present to the jury, including which witnesses to call, represents an attorney's decision regarding trial tactics and lies within the proper discretion of trial counsel." *State v. Doppler,* 590 N.W.2d 627, 633 (Minn.1999).

The record indicates that all of the decisions by counsel were based on trial strategy. Fedor has failed to provide any evidence that his counsel's representation fell below an objective standard of reasonableness. First, the value of any impeachment evidence against C.M.K. is speculative at best. Fedor has failed to show that this would affect the theory of the case. Secondly, Brooks' failure to investigate the credentials of Patrick Price was irrelevant. Price was not testifying as an expert, but as the mandated reporter of the crime. Finally, Dr. Underwager did not testify because of trial tactics. The trial court stated that if Dr. Underwager was allowed to testify regarding the taped interview of C.M.K. and the theory of suggestibility, the videotaped interview would be allowed into evidence. The trial court reasoned that Dr. Underwager would not be allowed to testify and essentially opine to C.M.K.'s credibility without allowing the jury to view the videotape. Fedor was informed by counsel as to the consequences, and Fedor made an informed choice not to have Dr. Underwager testify. The record also indicates that his counsel had other reasons not to show the videotape including a detailed description of the sexual contact. *See Doppler,* 590 N.W.2d at 633 ("Appellate courts, which have the benefit of hindsight, do not review for competency matters of trial strategy.").

Even if trial counsel erred in failing to investigate, Fedor must show that he was prejudiced as a result. *Lahue,* 585 N.W.2d at 790. This court determines prejudice by examining whether "under the totality of the circumstances, the result would have been different if counsel had not erred." *Id.* (citation omitted).

> This court may dispose of an ineffective assistance of counsel claim when the appellant fails to prove there was a reasonable probability the outcome would have been different.

*Hale v. State,* 566 N.W.2d 923, 927 (Minn. 1997).

Even if counsel was ineffective, the evidence against Fedor was so strong that any errors committed did not prejudice him. *See In re Welfare of L.B.,* 404 N.W.2d 341, 345 (Minn.App.1987) (finding that where "the record contains overwhelming evidence against [appellant,] [t]here is no reasonable probability that the result of the proceeding would have been different had [the appellant] been represented by a different attorney"). Fedor only argues that counsel failed to investigate further in an attempt to impeach C.M.K. and other witnesses. Accordingly, Fedor's ineffective assistance of counsel argument fails.

## III.

Fedor argues that the trial court committed prejudicial error when it

denied the jury's request for a transcript in chambers without recalling the jury to the courtroom. The manner in which a trial court responds to a jury's request to rehear testimony is within the trial court's discretion and will not be reversed absent an erroneous exercise of that discretion. *See State v. Rean*, 421 N.W.2d 303, 306 (Minn.1988).

Here, appellant did not object to the manner in which the trial court failed to provide for the rehearing of the evidence. Generally, a defendant's failure to object to the trial court's response to a jury request operates as a waiver of the right to raise the issue on appeal. *See, e.g., State v. Lane*, 582 N.W.2d 256, 258 (Minn.1998). But this court will consider plain error affecting substantial rights if the error had the effect of denying the defendant a fair trial. *Id.* (quoting *Van Buren v. State*, 556 N.W.2d 548, 551 (Minn.1996)); *cf. State v. McMorris*, 373 N.W.2d 593, 595 (Minn.1985) (requiring "good reason" to overlook defendant's failure to object).

Fedor does not question the trial court's denial of the jury's request, but, instead, claims the trial court erred in not returning the jury to the courtroom before denying its request. During deliberations, the jury asked to see the entire transcript.

It the rule provides that

> [i]f the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, the jurors shall be conducted to the courtroom. The court, after notice to the prosecutor and defense counsel, may have the requested parts of the testimony read to the jury and permit the jury to re-examine the requested materials admitted into evidence.

Minn. R.Crim. P. 26.03, subd. 19(2). Because the trial court denied that request in writing without addressing the jury in the courtroom, the trial court did not comply with the procedural requirements of 26.03, subd. 19(2). However, because the jury requested the entire 200 page transcript, rather than asking for specific portions of the transcript, the request was unreasonable. *See State v. Scott*, 277 N.W.2d 659, 660 (Minn.1979) (upholding trial court's conclusion that the jury's request for re-reading of nearly half of the total trial testimony was unreasonable); *State v. Schluter*, 281 N.W.2d 174, 177 (Minn.1979) (holding that it was not error for the trial court to refuse to give the jury a transcript which amounted to over one-third of the entire trial testimony). In light of these facts, we cannot conclude that Fedor was prejudiced by the trial court's failure to return the jury to the courtroom before denying the request.

**IV.**

Fedor argues that the trial court erred by (1) restricting the expert's testimony; (2) showing bias against his expert and counsel; and (3) reversing a prior order regarding the admissibility of a police video.

First, Fedor argues that the trial court erred in restricting his expert's testimony. The determination of the sufficiency of foundation for an expert's testimony and the admissibility of that testimony is left to the sound discretion of the trial court. *Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 760 (Minn.1998). The basic consideration in determining whether expert testimony should be admitted is whether or not it will be helpful to the jury. Minn. R. Evid. 702; *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn. 1980). Even if expert testimony is helpful, its probative value must be balanced against the danger of unfair prejudice,

confusion or misleading the jury. Minn. R. Evid. 403.

As the record indicates, Fedor's expert, Dr. Underwager, was restricted from testifying regarding his theory of learned memory, delayed recall and statistical evidence. But, Dr. Underwager was allowed to testify, generally, about certain interviewing techniques.

Specifically, Fedor argues that Dr. Underwager's testimony would explain the science of "how people can come to believe things happened in ways that they didn't by innocuous discussions lead by sincere people who only want to get to the truth." But, such testimony would influence the jury because Dr. Underwager would be opining to the trustworthiness and credibility of C.M.K. A ruling preventing Dr. Underwager from testifying about the concept of learned memory was affirmed in a previous decision by this court. *See State v. Erickson,* 454 N.W.2d 624, 627–28 (Minn.App.1990) (stating that it is "within the jury's ability to assess [the victim's] credibility in the face of the defense theory that [the victim] had been coerced and suggestively interviewed without learning about the psychological theory of 'learned memory' "), *review denied* (Minn. May 23, 1990). The issue of credibility was properly left to the jury without Dr. Underwager's opinion testimony on learned memory.

Because C.M.K. testified that she never forgot about the abuse, Dr. Underwager's proposed testimony regarding delayed recall is irrelevant. *See* Minn. R. Evid. 401 (evidence is relevant if it makes the existence of any fact more probable or less probable than it would be without the evidence). The trial court did not err in prohibiting this specific expert testimony.

Fedor also challenges the trial court's decision to exclude Dr. Underwager's testimony that one-half to three-quarters of children report sexual abuse within one week. Because there was no foundation for the statistical evidence, and such evidence is likely to have an exaggerated impact on the jury, we find no error in the trial court's decision to exclude the testimony regarding the statistical evidence. *See State v. Oslund,* 469 N.W.2d 489, 495 n. 5 (Minn.App.1991) (discouraging the use of testimony in terms of statistical probabilities), *review denied* (Minn. July 24, 1991).

Next, Fedor claims that the trial court's combined rulings limiting Dr. Underwager's expert testimony showed bias against his expert. Fedor further claims that the evidentiary rulings caused his counsel to feel pressured into not calling Dr. Underwager as an expert witness, and that the trial court's in-chambers interactions with his counsel intimidated her. However, the trial court has wide discretion in deciding whether to admit expert testimony. *State v. Miles,* 585 N.W.2d 368, 371 (Minn.1998). In addition, the trial court explained that its in-chambers conversation with Fedor's counsel was not intended to intimidate her, but rather, its intent was to clarify the court's position regarding its prior evidentiary rulings. Based on the facts in the record, we cannot conclude that the trial court intimidated Fedor's counsel or was biased against her.

Moreover, Fedor fails to show any evidence of prejudice. *See Nachtsheim v. Wartnick,* 411 N.W.2d 882, 891 (Minn.App. 1987) (claim of judicial bias requires an affirmative showing of prejudice), *review denied* (Minn. Oct. 28, 1987). The comments were made outside the presence of the jury and were not prejudicial. *Cf. Hansen v. St. Paul City Ry. Co.,* 231 Minn. 354, 360, 43 N.W.2d 260, 264 (1950) (granting a new trial where the trial court's clashes with the defendant's coun-

sel occurred in the presence of the jury). Therefore, the trial court did not abuse its discretion.

■ Finally, Fedor challenges the trial court's decision to admit C.M.K.'s videotaped interview. While initially the trial court ruled the tape inadmissible, it changed its ruling after it found Dr. Underwager's testimony regarding interviewing techniques was based on that videotaped interview. Specifically, the trial court stated that the jury needed to view it to determine C.M.K.'s credibility. It is the jury's duty to assess the victim's credibility when the defense claims that the victim was "coerced and suggestively interviewed without learning about the psychological theory of 'learned memory'". *See Erickson*, 454 N.W.2d at 628. We find no error in the trial court's decision to admit as evidence the videotaped interview.

### DECISION

Because (1) there was no new evidence; (2) trial counsel was not ineffective; (3) the jury's request for testimony was not reasonable; (4) the trial court may restrict testimony; and (5) appellant was not prejudiced, the postconviction court properly denied Fedor a new trial.

**Affirmed.**