# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-1467

———————

Thomas Wayne Evenstad,     *

    *

      Petitioner - Appellant,     *   Appeal from the United States

    *   District Court for the

v.     *   District of Minnesota.

    *

Terry L. Carlson,     *

    *

      Respondent - Appellee.     *

———————

Submitted:  September 25, 2006
Filed:  November 30, 2006

———————

Before BYE, ARNOLD and MELLOY, Circuit Judges.

———————

BYE, Circuit Judge.

Thomas Wayne Evenstad was convicted in Minnesota state court of first and third degree criminal sexual conduct for the rape of eighteen-year-old H.S. Evenstad's direct appeal and petition for post-conviction relief were denied. Evenstad appealed the denial of his petition to the Minnesota Court of Appeals, which was denied. He next petitioned the Minnesota Supreme Court, which denied his petition for review. He thereafter petitioned the federal district court[1] for habeas relief under

———————

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the Honorable Magistrate Judge Raymond L. Erickson, Magistrate Judge for the District of Minnesota.

28 U.S.C. § 2254.  The district court dismissed the petition.  This court granted a certificate of appealability on two issues.  For the reasons discussed below, we affirm the district court.

I

On March 19, 1999, Evenstad was convicted of raping H.S.  Evenstad and H.S. both participated in a telephone "chat line" service which permitted users to exchange telephone messages.  After hearing several of Evenstad's outgoing messages over the course of several weeks, H.S. contacted Evenstad and made plans to meet him.  He picked her up from her aunt's home, drove her to his home, and sexually assaulted her.  After the assault, H.S. began leaving messages on the "female side" of the chat line to find other women who had been assaulted by Evenstad.  As a result of her inquiry, two Spreigl[2] witnesses stepped forward: A.M.-1 and A.M.-2.  The trial court ruled this testimony admissible and both witnesses testified at Evenstad's trial about prior sexual misconduct by Evenstad, after he met them through chat lines.

Evenstad was found guilty by a trial jury.  In a subsequent petition for post-conviction relief, Evenstad argued he was entitled to relief as: 1) he had evidence A.M.-2 presented false trial testimony; and 2) the government violated his due process rights by failing to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963).

The post-conviction court held a hearing to address Evenstad's claims.  At the hearing, Evenstad presented testimony from Karen Whalen.  She testified her son had dated A.M.-2's best friend Tammy.  Over the state's hearsay objection, Whalen

---

[2]In Minnesota, evidence of prior bad acts is typically referred to as Spreigl evidence, from the landmark Minnesota Supreme Court case of State v. Spreigl, 139 N.W.2d 167 (Minn. 1967).  A witness testifying to said bad acts is called a Spreigl witness.  Spreigl evidence is governed by Minnesota Rule of Evidence 404(b).

testified she heard A.M.-2 say her trial testimony was false. She also testified she did not call the police or inform anyone about this statement prior to speaking with defense investigators.

Evenstad also called another witness, J.A. During the police investigation of Evenstad, J.A. reported Evenstad raped her and the state originally charged him based on those accusations. At the post-conviction hearing, J.A. testified about a photographic lineup conducted by Officer Beth Roberts, the officer assigned to investigate Evenstad. J.A. claimed Officer Roberts conducted an untaped photographic lineup with her and, after J.A. pointed to the wrong photograph, Officer Roberts directed her to Evenstad's photograph. Officer Roberts then conducted the taped lineup during which J.A. identified Evenstad. Throughout the investigation, J.A. provided several contradictory statements to both defense investigators and Officer Roberts. Ultimately, J.A. recanted her story and those charges against Evenstad based on her accusations were dropped. J.A. did not testify at trial and evidence of her identification of Evenstad was not presented at trial. Evenstad's trial counsel acknowledged J.A. had "significant credibility problems." At the post-conviction hearing, J.A. admitted she had lied to the police about Evenstad during the investigation.

The post-conviction court denied relief, concluding Evenstad's newly acquired evidence — Whalen's testimony alleging A.M.-2 had testified falsely—did not warrant a new trial. In doing so it relied on the test for newly acquired evidence articulated in State v. Fedor, 628 N.W.2d 164, 169 (Minn. Ct. App. 2001), which applies the test from Ranier v. State, 566 N.W.2d 692, 695 (Minn. 1997).[3] The post-

---

[3]Under the Ranier test, a new trial is warranted if: 1) the evidence was not known to the defendant or his counsel at the time of the trial; 2) the evidence could not have been discovered through due diligence before trial; 3) the evidence is not cumulative, impeaching or doubtful; and 4) the evidence would *probably produce* an acquittal or a more favorable result. Ranier, 566 N.W.2d at 695 (emphasis added).

conviction court found Whalen's testimony was "impeaching and doubtful evidence" and concluded, even if true, the testimony would not have changed the outcome of the trial because A.M.-2 was only one of two <u>Spreigl</u> witnesses. The post-conviction court also found no <u>Brady</u> violation as, even if suppressed, the "one piece of evidence"—the alleged prompting of J.A.—would not have changed the outcome of the trial.

Evenstad appealed to the Minnesota Court of Appeals, which rejected his allegations of error and affirmed the post-conviction court. The state court of appeals found the post-conviction court erred by using the <u>Ranier</u> test. It determined the proper test should have been the test articulated in <u>Larrison v. United States</u>, 24 F.2d 82, 87-88 (7th Cir. 1928), as adopted by the Minnesota Supreme Court in <u>State v. Caldwell</u>, 322 N.W.2d 574, 584-85 (Minn. 1982) and <u>Ferguson v. State</u>, 645 N.W.2d 437 (Minn. 2002).[4] The basis for this finding was its re-characterization of Evenstad's claim as one of false trial testimony rather than newly discovered evidence. The state appeals court concluded, however, the post-conviction court's error was harmless, as the fourth prong of the <u>Rainier</u> test was similar to the second prong of the <u>Larrison</u> test and the result would have been the same had the less-stringent <u>Larrison</u> test been applied. It also affirmed the post-conviction court's determination there was no <u>Brady</u> violation as the alleged improper prompting of J.A. was not material. They found there was not a reasonable probability, had this evidence not been suppressed, that the jury would have believed the two <u>Spreigl</u> witnesses were also improperly prompted by Officer Roberts to identify Evenstad. Evenstad's subsequent petition for review to the Minnesota Supreme Court was denied.

---

[4]Under the <u>Larrison</u> test, a new trial is warranted if: 1) the court is reasonably satisfied the testimony given by a material witness is false; 2)without the testimony, the jury *might have reached* a different conclusion; and 3) the party seeking the new trial was taken by surprise when the false testimony was given, and was unable to meet it or did not know of its falsity until after the trial. <u>Larrison</u>, 24 F.2d at 87-88 (emphasis added).

Evenstad filed for federal habeas corpus relief alleging several claims including the evidence of false trial testimony and the Brady violation. The district court dismissed the petition. We granted a certificate of appealability limited to Evenstad's claims that: 1) A.M.-2 testified falsely; and 2) the state withheld exculpatory evidence regarding J.A.'s prompted identification in violation of Brady.

II

Our review of Evenstad's claims is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). In the interests of finality and federalism, federal courts are constrained by AEDPA to exercise only a "limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). The court may not grant a writ of habeas corpus with respect to any issue decided by the Minnesota state courts unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d); see also Liggins v. Burger, 422 F.3d 642, 647 (8th Cir. 2005).

A state court decision is "contrary to" clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth [by the Supreme Court]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court" and nevertheless arrives at a different result. Penry v. Johnson, 532 U.S. 782, 792 (2001). A decision is an "unreasonable application of" federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. Furthermore, as the Supreme Court has clarified: "[E]ven if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793. A state court decision involves "an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings," 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n.4 (8th Cir. 2001).

## A

Evenstad first argues the state courts below erred in their treatment of Ms. Whalen's post-conviction testimony. He does not claim the state suppressed this evidence or knew or should have known about this evidence. Instead, he argues both state courts erred in their application of state law and these errors constitute due process violations: 1) the post-conviction court erred in relying on the Ranier test; and 2) the Minnesota Court of Appeals erred in determining this reliance was harmless error. He claims relief under both 28 U.S.C. § 2254(d)(1) and (2).[5]

Like the district court, we lack authority to review the Minnesota state courts' interpretation and application of state law, for "federal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). In conducting habeas review, a federal court is limited to deciding whether the decisions by the Minnesota courts were "contrary to, or involved an unreasonable application of, clearly established *Federal law*, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (emphasis added). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned

---

[5]Although Evenstad makes the superficial argument he is entitled to relief under 28 U.S.C. § 2254(d)(2), he does not attempt to rebut the factual findings of either state court, nor does he identify which findings are objectionable. His sole complaint is with the courts' application of state law. We therefore limit our review to whether Evenstad is entitled to relief under 28 U.S.C. § 2254(d)(1).

that § 2254(d)(1) "restricts the source of clearly established law to this Court's jurisprudence." Williams v. Taylor, 529 U.S. 362, 412 (2000). Therefore, it is not enough for Evenstad to argue the Minnesota state courts misapplied state law. To obtain habeas relief, Evenstad must be able to point to the Supreme Court precedent he thinks the Minnesota state courts acted contrary to or applied unreasonably. See Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006) (affirming denial of habeas petition where the appellant did not "point to a Supreme Court precedent that he thinks the [Arkansas] state courts acted contrary to or unreasonably applied"); see also Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, [the petitioner] must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. . . . The petitioner's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."). We find Evenstad has not met this burden.

Here Evenstad does not provide us with any Supreme Court authority supporting his position. He concedes the prosecution did not actually know A.M.-2's trial testimony was false. The Supreme Court has not addressed the issue of whether a due process violation occurs if a conviction is based on perjured testimony which was unknown to the prosecution at the time of trial. See Jacobs v. Scott, 513 U.S. 1067 (1995) (Stevens, J. dissenting); Drake v. Portuondo, 321 F.3d 338, 345 n.2 (2d Cir. 2003); see also Schaff v. Snyder, 190 F.3d 513, 530 (7th Cir. 1999). Furthermore, there is a circuit split regarding which standard applies in federal cases dealing with these facts.[6] When the federal circuits disagree as to a point of law, the

---

[6]Most circuits, including this one, absent a finding the government knowingly sponsored false testimony, require a petitioner seeking a new trial to show the jury would have "probably" or "likely" reached a different verdict had the perjury not occurred. See, e.g., United States v. Ogle, 425 F.3d 471, 472 (7th Cir. 2005); United States v. Williams, 233 F.3d 592, 594 (D.C. Cir. 2000); United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000) (applying "probably" standard to newly discovered evidence, but recognizing that a more lenient "might" standard would apply if the evidence is a witness recantation); United States v. Huddleston, 194 F.3d 214, 217

law cannot be considered "clearly established" under 28 U.S.C. § 2254(d)(1). See Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002) (holding where the federal circuits disagree "it is difficult to say the [state] court's decision is contrary to, or involved an unreasonable application of, clearly established federal law").

As the magistrate judge correctly noted, the majority of circuits, including ours, absent a finding the prosecutor knew of perjured testimony, require the petitioner to show the false testimony "would be likely to result in an acquittal." United States v. Duke, 50 F.3d 571, 576-77 (8th Cir. 1996). Even if this was clearly established federal law, Evenstad does not claim the state courts' decisions were contrary to, or involved an unreasonable application of, this law. In fact, Evenstad does not want the state courts to apply the predominant federal standard. Instead he desires this court to reverse his conviction because he claims the Minnesota Courts of Appeals unreasonably applied *state law* when it did not remand his case to the post-conviction court for application of the Larrison test—a less-stringent test than that employed by this court. Because of our limited authority under AEDPA, this is something we are not permitted to do. Evenstad's claims boil down to an issue of Minnesota state law and his attempt to recast the issue in a constitutional light is unavailing.

As there is no clearly established federal law on this issue, this court cannot conclude either state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" under 28 U.S.C. § 2254(d)(1).

---

(1st Cir. 1999); United States v. Diaz, 176 F.3d 52, 106 (2d Cir. 1999); United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997); United States v. Duke, 50 F.3d 571, 576-77 (8th Cir. 1996); and United States v. Krasny, 607 F.2d 840, 843 (9th Cir. 1979). Other circuits, like the Minnesota courts, apply a "possibility" standard granting relief whenever the discovery "might" have produced an acquittal. See, e.g., United States v. Roberts, 262 F.3d 286, 293 (4th Cir. 2001); United States v. Willis, 257 F.3d 636, 643 (6th Cir. 2001); and United States v. Massac, 867 F.2d 174, 178 (3d Cir. 1989) (implicitly adopting Larrison).

B

Evenstad next contends the state suppressed evidence that J.A. was directed by Officer Roberts to pick Evenstad from a photographic lineup in violation of <u>Brady</u>. As is axiomatic under <u>Brady</u>, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Banks v. Dretke</u>, 540 U.S. 668, 691(2004) (quoting <u>Brady</u>, 373 U.S. at 87). The government must disclose any evidence both "favorable to an accused" and "material either to guilt or to punishment." <u>Brady</u>, 373 U.S. at 87. The <u>Brady</u> rule applies to evidence which "impeaches the credibility of a government witness," <u>Dye v. Stender</u>, 208 F.3d 662, 665 (8th Cir. 2000), whether or not the accused has specifically requested the information. <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34 (1995). Evidence favorable to the accused is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Id.</u> at 433-34 (quoting <u>United States v. Bagley</u>, 473 U.S 667, 682 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>Bagley</u>, 473 U.S. at 682.

In determining the materiality of impeachment evidence, this court considers both the strength of the evidence at issue and the importance of the witness in establishing the defendant's guilt. <u>See</u> <u>Clay v. Bowersox</u>, 367 F.3d 993, 1000 (8th Cir. 2004) (finding no materiality as the impeachment value was negligible where the witness's credibility had already been attacked on cross examination and, although the witness's testimony was "unquestionably important" to the state's case, the most damaging evidence came from other witnesses); <u>Lingle v. Iowa</u>, 195 F.3d 1023, 1026-27 (8th Cir. 1999) (finding the suppressed impeachment evidence was not material, in part because the conviction was not based solely on the potentially impeached witness's testimony).

As a threshold matter, the state argues materiality is a question of fact which is entitled to a presumption of correctness. This court has found, however: "A state court's determination regarding materiality under Brady is a mixed question of law and fact which is not entitled to the presumption of correctness under 28 U.S.C. § 2254(d)." Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

Here, Evenstad argues evidence of the J.A. incident was suppressed, was plainly favorable to him, and was material as, had it been disclosed, there was a reasonable probability the result of the trial would be different. He argues the evidence was material, as it would have had significant impeachment value as to Officer Roberts. He argues "the withheld evidence would have effected the credibility of virtually every one of the state's witnesses." He essentially argues, because J.A. testified *her* identification of Evenstad at the photographic lineup was improperly prompted by Officer Roberts, it follows the same misconduct occurred in the other lineups conducted by Officer Roberts (those of A.M.-1 and A.M.-2).

The threshold issue here is whether the evidence of Officer Robert's alleged improper prompting of J.A. is material. The district court found it is not material and we agree. The record indicates J.A. was a problematic witness with significant credibility issues. She recanted her allegations against Evenstad prior to trial, leading the state to drop those charges against Evenstad based on her allegations. Neither the state nor the defense called J.A. as a witness at trial. Defense counsel acknowledged J.A. had "significant credibility problems." The first time J.A. testified was before the post-conviction court regarding her allegation that Officer Roberts improperly prompted her identification of Evenstad. During this testimony, J.A. admitted she had lied several times throughout the investigation. Because of these credibility problems, the strength of such evidence becomes severely compromised.

The only value the "improper prompting" evidence could have is to impeach Officer Roberts. She did conduct photographic lineups with A.M.-1 and A.M.-2 and

testified at trial about these identifications. However, both A.M.-1 and A.M.-2 provided separate testimony about their identifications of Evenstad, who argues Officer Roberts was a "key witness," as she was the only police officer to testify. Although her testimony was undoubtedly important, it does not follow her impeachment would have changed the outcome of the trial. Officer Robert's role was secondary and Evenstad's conviction was not based solely on her testimony. Furthermore, A.M.-1 and A.M.-2, as Spreigl witnesses, were also secondary witnesses. Evenstad was convicted for his rape of H.S. He does not argue, and the record does not show, this evidence would have in any way impacted the state's case against him for the rape of H.S. Based on the weak impeachment value of the evidence and the limited impact the evidence could have had on the case against Evenstad, we determine such evidence is not material under Brady. Because we so find, we need not consider whether or not it was suppressed. Thus, we agree with the district court there was no Brady violation.

## III

We affirm the district court's denial of habeas relief and dismissal of Evenstad's § 2254 petition.

_____