# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1394

_____

| | | |
|---|---|---|
| Stephanie Dawn Losh, | * | |
| | * | |
| Petitioner – Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Joan Fabian, Minnesota | * | District of Minnesota. |
| Commissioner of Corrections, | * | |
| | * | |
| Respondent – Appellee. | * | |

_____

Submitted: November 18, 2009
Filed: January 4, 2010

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Stephanie Dawn Losh filed this petition for a writ of habeas corpus after the Minnesota Supreme Court affirmed the revocation of her probation and the execution of her stayed 120 month sentence for aiding and abetting kidnapping. Shortly after her probation had been revoked, the United States Supreme Court decided in Blakely v. Washington, 542 U.S. 296 (2004), that an upward departure from the maximum statutory sentence is unconstitutional under a guideline system unless the underlying

facts have been found by a jury or admitted by the defendant. The district court[1] denied Losh's petition after concluding that the state supreme court did not act contrary to or unreasonably apply clearly established federal law when it rejected Losh's attempt to raise a Blakely challenge after the state's direct appeal period had expired . It granted her a certificate of appealability after Jimenez v. Quarterman, 129 S. Ct. 681 (2009), was decided. We affirm.

Losh was indicted for second degree felony murder for her role in the beating death of Brian Jenny, in violation of Minn. Stat. § 609.19, subdiv. 2(1). She pled guilty to aiding and abetting kidnapping involving unsafe release and great bodily harm, in violation of Minn. Stat. § 609.25, subdiv. 2(2). The court departed upward from the state sentencing guidelines presumptive 86 month sentence due to the victim's vulnerability and sentenced Losh to 120 months imprisonment. The court stayed execution of the sentence conditioned on Losh's successful completion of a forty year term of probation and one year imprisonment. On November 17, 2003 the 90 day appeal period expired, under Minn. R. Crim. P. 28.02, subdiv. 4(3), without Losh having filed an appeal.

On March 8, 2004 Losh was found to have violated the terms of her probation for ingesting a pill containing the narcotic hydrocodone. Her probation was revoked, and the stayed 120 month sentence was executed. Shortly thereafter, on June 24, 2004, the Supreme Court decided Blakely. On August 10, 2004 Losh sought to appeal her sentence and the revocation of her probation under State v. Fields, 416 N.W.2d 734 (Minn. 1987). In Fields, the state supreme court had allowed a defendant to challenge an upward departure on appeal from the denial of his motion at a revocation hearing to modify his sentence. The supreme court rejected Losh's attempt to use Fields to argue that her conviction was "on 'direct review' at the time Blakely was

---

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

decided" because a Fields appeal does not qualify as direct review and therefore "Losh is not entitled to the retroactive application of Blakely on this appeal." State v. Losh, 721 N.W.2d 886, 895 & n.15 (Minn. 2006).

After Losh's petition for certiorari was denied by the Supreme Court, she filed this petition for a writ of habeas corpus. The district court denied the petition on the basis that the state supreme court had not acted contrary to or unreasonably applied clearly established federal law. After Jimenez v. Quarterman, 129 S. Ct. 681 (2009), was issued, however, it granted Losh a certificate of appealability on the following issue:

> Did [Losh]'s judgment of conviction and sentence become final on direct review after the Supreme Court handed down its decision in Blakely v. Washington, so that the sentence imposed in [Losh]'s state criminal case is subject to the constitutional requirements prescribed by Blakely?

In a series of cases the Supreme Court has considered the potential conflict between sentencing guidelines and the Sixth Amendment rights of individuals being sentenced under them. See, e.g., United States v. Booker, 543 U.S. 220 (2005); Blakely, 542 U.S. 296; Ring v. Arizona, 536 U.S. 584 (2002); Apprendi v. New Jersey, 530 U.S. 466 (2000). The Supreme Court decided that the Sixth Amendment "proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." Cunningham v. California, 549 U.S. 270, 274 (2007). Blakely itself clarified that "the [relevant] 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted).

The constitutional rule of criminal procedure established in Blakely is only available to defendants whose criminal cases were not yet final at the time the decision was issued. United States v. Stoltz, 149 Fed. Appx. 567, 569 (8th Cir. 2005), cert.

denied, 547 U.S. 1028 (2006); see also United States v. Price, 400 F.3d 844, 849 (10th Cir. 2005); Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005); United States v. Phillips, 109 Fed. Appx. 627, 628 (4th Cir. 2004); In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004). "When a Supreme Court decision results in a 'new rule' of criminal procedure, that rule applies to all criminal cases still pending on direct review, but, as to convictions that are already final, the rule applies only in limited circumstances." Never Misses a Shot v. United States, 413 F.3d 781, 783 (8th Cir. 2005) (citing Schriro v. Summerlin, 542 U.S. 348, 351 (U.S. 2004)).

The focus of our inquiry is whether the state supreme court acted contrary to or unreasonably applied clearly established federal law when it ruled against Losh. See Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1). Losh's habeas petition might be granted on one of two grounds under the "contrary to" clause of § 2254(d)(1): "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). Her petition could be granted under the "unreasonable application" clause only if the state court applied the correct governing legal principle in an objectively unreasonably manner. Id. at 409, 413. Only rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, id. at 412, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point, see Evenstad v. Carlson, 470 F.3d 777, 784 (8th Cir. 2006).

The state supreme court correctly concluded that the retroactivity issue is governed by the Supreme Court decisions in Schriro v. Summerlin, 542 U.S. 348 (2004), Teague v. Lane, 489 U.S. 288 (1989), and Griffith v. Kentucky, 479 U.S. 314 (1987). See Losh, 721 N.W.2d at 893. Those precedents clearly established that "[a] state conviction and sentence become final for purposes of retroactivity analysis when

the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." Caspari v. Bohlen, 510 U.S. 383, 391 (1994) (citing Griffith, 479 U.S. at 321 n.6). The supreme court reasonably applied that precedent when it concluded that Losh's conviction and sentence had "become final the date her period of direct appeal expired" because she had failed to seek direct review within the 90 day period prescribed by Minn. R. Crim. P. 28.02, subdiv. 4(3). See Losh, 721 N.W.2d at 894–95. Losh has not identified any decision in which the Supreme Court decided a case involving "materially indistinguishable facts" differently. Nor have we.

The supreme court concluded that Losh was not entitled to appeal her sentence on the basis of Blakely because the date on which her period of direct appeal expired and her conviction and sentence became final (November 17, 2003) preceded the date on which Blakely was decided (June 24, 2004). Id. at 894–95. The Supreme Court has yet to consider whether Blakely applies retroactively to cases that became final before it was decided. See Burton v. Stewart, 549 U.S. 147 (2007) (case accepted to consider retroactive effect of Blakely dismissed on procedural grounds). Because no clearly established federal law therefore exists, § 2254(d)(1) affords no grounds for disturbing the supreme court's conclusion. See Evenstad, 470 F.3d at 784. Our own court has reached a similar conclusion. See Stoltz, 149 Fed. Appx. at 569 (holding Blakely inapplicable to final cases that preceded its issuance).

Losh challenges the supreme court's conclusion, contending that her conviction and sentence had not become final when Blakely was decided because at that time she retained the ability to appeal the revocation of her probation under Fields. The supreme court rejected this very argument. It identified the clearly established federal law that bounds the inquiry: that is, whether "the availability of direct appeal ha[d] been exhausted" at the time Blakely was decided. Losh, 721 N.W.2d at 893 (citation omitted); see also Caspari, 510 U.S. at 391. It also noted that the Supreme Court has

not yet had occasion "to classify state appellate review methods (other than direct appeal from judgment of conviction) as either 'direct review' or 'collateral review.'" Losh, 721 N.W.2d at 894 n.12. In the absence of federal guidance, the supreme court interpreted its own law to conclude that a Fields appeal is not a form of direct review and that Losh's conviction and sentence had therefore become final upon expiration of the direct appeal period. Id. at 894–95.

Losh contends that the characterization of a state appellate review method as direct or not is a matter of federal law and is therefore subject to federal interpretation. The state argues the opposite, that federal courts are bound on habeas review by the state supreme court's characterization of its own appellate review process. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Federal law imposes no obligation on a state to provide the right to a direct appeal from a judgment of conviction, Jones v. Barnes, 463 U.S. 745, 751 (1983), or the right to collateral review of that judgment once it is final, Pennsylvania v. Finley, 481 U.S. 551, 556–57 (1987). Minnesota's highest court is plainly competent to determine that a type of appellate review under its own law is not direct. That authority is a natural correlate of "the discretion of the state to allow or not to allow such a review" and, when providing a right to direct review, to impose a period of limitation within which that right must be invoked. See Brown v. Allen, 344 U.S. 443, 486 & n.36 (1953) (quoting McKane v. Durston, 153 U.S. 684, 687 (1896)).

Our review is limited to whether the supreme court's characterization of a Fields appeal as something other than direct review was contrary to or an unreasonable application of clearly established federal law. See § 2254(d)(1). Some federal courts of appeal, including our own, have decided that state law governs whether a state appellate review procedure is direct or collateral for purposes of 28 U.S.C. § 2244(d)(1)(A), the statute of limitations that AEDPA imposes on habeas petitions from state court judgments. See, e.g., O'Neal v. Kenny, 579 F.3d 915, 919 (8th Cir.

2009) (adopting rule from 501 F.3d 969, 970 (8th Cir. 2007), <u>vacated on other grounds</u>, 129 S. Ct. 992 (2009)); <u>Frasch v. Peguese</u>, 414 F.3d 518, 522 (4th Cir. 2005); <u>Orange v. Calbone</u>, 318 F.3d 1167, 1170 (10th Cir. 2003); <u>Bridges v. Johnson</u>, 284 F.3d 1201, 1202 (11th Cir. 2002). Others do not. <u>See</u> <u>Teas v. Endicott</u>, 494 F.3d 580, 582 (7th Cir. 2007) (federal law governs characterization of state appellate review procedure for purposes of § 2244(d)(1)(A) to prevent nullification of time limits set by § 2244(d)). Neither the Supreme Court nor any federal court of appeals has considered whether state law governs the characterization of a type of state appellate review for purposes of retroactivity analysis. We could therefore not conclude that the supreme court's conclusion that a <u>Fields</u> appeal is not a form of direct review under Minnesota law was contrary to or an unreasonable application of clearly established federal law. <u>See</u> <u>Evenstad</u>, 470 F.3d at 784.

Finally, Losh contends that the supreme court's decision was contrary to <u>Jimenez v. Quarterman</u>, 129 S. Ct. 681 (2009). In <u>Jimenez</u>, the Supreme Court held that "where a state court has in fact reopened direct review . . . [by] grant[ing] a criminal defendant the right to file an out-of-time direct appeal during state collateral review, . . . [the] judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." <u>Id.</u> at 686 & n.4. Losh argues that her <u>Fields</u> appeal was also an "out-of-time" direct appeal making her sentence not yet final when <u>Blakely</u> was decided.

In <u>Jimenez</u>, the Supreme Court specifically relied upon the fact that under prevailing state law "the 'order granting an out-of-time appeal restored the pendency of the direct appeal.'" <u>Id.</u> at 686 (alteration in original) (quoting <u>Ex parte Torres</u>, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Here, on the other hand, the supreme court ruled definitively that under state law Losh's appeal was not direct. Furthermore, though both <u>Jimenez</u> and the supreme court decision turned upon the concept of finality, that concept is one "that has been 'variously defined; like many legal terms, its precise meaning depends on context.'" <u>Id.</u> at 685 (quoting <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003)). Because <u>Jimenez</u> concerned the definition of finality in

the context of AEDPA's statute of limitations, it would not necessarily affect our review of the supreme court decision in Losh's case which concerned finality for purposes of determining retroactivity.

Moreover, Jimenez cannot be considered clearly established federal law for purposes of our review since it was decided after the supreme court decided Losh's case. See Williams, 529 U.S. at 412. Losh disagrees, arguing that Jimenez merely applied an "old rule," which was clearly established federal law at the time her case was decided. But Jimenez's holding cannot be considered an old rule unless "[it] was dictated by precedent—[that is, if] no other interpretation was reasonable." Lambrix v. Singletary, 520 U.S. 518, 538 (1997) (emphasis in original). Other interpretations of finality in the context of AEDPA's statute of limitations were reasonable, however, as Jimenez itself made clear. Indeed, the Supreme Court reversed the Fifth Circuit's decision in Jimenez because it was based on a "contrary reading" of finality in that context. See Jimenez, 129 S. Ct. at 687. We therefore cannot conclude that the rule established in Jimenez was dictated by precedent. See Lambrix, 520 U.S. at 538.

For these reasons, we affirm the judgment of the district court.

_____