# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1981

_____

Lloyd Grass,                                            *
                                                        *
        Appellant,                              *
                                                        *  Appeal from the United States
    v.                                           *  District Court for the
                                                        *  Eastern District of Missouri.
Robert Reitz,                                          *
                                                        *
        Appellee.                               *

_____

Submitted: April 11, 2011
Filed: July 5, 2011

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Lloyd Grass, a person committed to the custody of the Missouri Department of Mental Health, appeals the district court's dismissal of his 28 U.S.C. § 2254 petition for failure to exhaust state remedies. Because we conclude that Grass has exhausted the claim he raises in his petition, we reverse.

## I.    BACKGROUND

In 1992, Grass stabbed his wife to death. The State of Missouri charged him with first-degree murder. After a mental evaluation, Grass was diagnosed with

Psychotic Disorder, Not Otherwise Specified, In Partial Remission. Following this diagnosis, Grass's plea of not guilty by reason of mental disease or defect was accepted, and he was committed to the custody of the Missouri Department of Mental Health, pursuant to Mo. Rev. Stat. section 552.040.2.[1] Over the next several years, Grass unsuccessfully petitioned for release. In 1996, he escaped from St. Louis State Hospital and consequently was convicted and imprisoned for escape. After serving 28 months of his 5-year escape sentence, Grass was paroled back into the custody of the Department of Mental Health in 2001.

Under section 552.040, a committed person can petition for either conditional or unconditional release. Conditional release is for a limited duration and is qualified by reasonable conditions. *See* § 552.040.10(3). To obtain conditional release a petitioner must prove, by clear and convincing evidence, that he "is not likely to be dangerous to others while on conditional release." § 552.040.12(6). "[A] conditional release implies that despite a mental disease or disorder, [the committed person is] eligible for limited freedom from a mental health facility, subject to certain conditions." *Greeno v. State*, 59 S.W.3d 500, 504 (Mo. banc 2001). Unconditional release, by contrast, can be granted only if the petitioner shows "by clear and convincing evidence that [he] . . . does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering [him] dangerous to the safety of himself or others." § 552.040.7. In the case of an individual, like Grass, who was committed pursuant to an acquittal of first-degree murder, neither conditional nor unconditional release may be granted unless the court also finds that the person "is not now and is not likely in the reasonable future to commit another violent crime" and "is aware of the nature of the violent crime committed . . . and presently possesses the capacity to appreciate the criminality of the violent crime . . . and . . . to conform [his] conduct to the requirements of law in the future." *See* § 552.040.20. The denial of

---

[1] Section 552.040.2 provides that "[w]hen an accused is tried and acquitted on the ground of mental disease or defect excluding responsibility, the court shall order such person committed to the director of the department of mental health for custody."

a petition for either conditional or unconditional release is "without prejudice to the filing of another application after the expiration of one year." § 552.040.13, 8.

In 2004, Grass filed petitions for both conditional and unconditional release. The Circuit Court of Warren County, Missouri consolidated the petitions and, after a hearing, entered judgment denying Grass's petition for unconditional release but granting his petition for conditional release. The court found that Grass "does not suffer from any mental disease or defect," that "[h]e is not a danger to himself or others" or "likely to be dangerous to others while on conditional release," and that "[h]e is not now and is not likely in the foreseeable future to commit another violent crime . . . because of his mental illness." *Grass v. State*, No. 99-cv-155304, slip op. at 15 (Mo. Cir. Ct. Warren Cnty. filed Mar. 10, 2006). Both Grass and the State appealed. On appeal, Grass argued that the circuit court's findings that he "does not suffer from any mental disease or defect" and "is not a danger to himself or others" entitled him to unconditional release both under Mo. Rev. Stat. section 552.040.7 and under the Supreme Court's holding in *Foucha v. Louisiana* that "keeping [a committed person] against his will in a mental institution . . . absent a determination in civil commitment proceedings of current mental illness and dangerousness" violated the Due Process Clause of the Fourteenth Amendment, 504 U.S. 71, 77-78 (1992). For its appeal, the State argued, *inter alia*, that the circuit court's findings in support of conditional release were not supported by the evidence.

The Missouri Court of Appeals affirmed the circuit court's denial of Grass's petition for unconditional release. Although it acknowledged that, as part of its conditional release analysis, the circuit court had found that Grass currently was not mentally ill or a danger to others, the court of appeals concluded that, under the Missouri statute, such a finding was insufficient to entitle a petitioner to unconditional release:

> [The circuit court] did not make the finding required by sections 552.040.7(6) and 552.040.9 for unconditional release that petitioner was

-3-

not likely *in the reasonable future* to have a mental disease or defect rendering him *dangerous to the safety* of himself or others. This is a different factual finding from those required for conditional release, and it is not encompassed by the findings made on conditional release.

*Grass v. State*, 220 S.W.3d 335, 340 (Mo. Ct. App. 2007). The court did not address Grass's *Foucha* due-process challenge. As to the State's appeal, the court of appeals agreed that the circuit court's finding that Grass "is not now and is not likely in the foreseeable future to commit another violent crime"—a finding required for the grant of conditional release—was not supported by the evidence. Although ordinarily, the court noted, it would remand for limited additional findings, "the judge who presided over the trial, heard the evidence, and observed the witnesses, is now deceased. Under these circumstances, we have no alternative but to reverse the judgment and remand for a new trial." *Id.* at 344. Accordingly, the court of appeals entered judgment affirming "[t]hat part of the judgment of the trial court denying unconditional release" and reversing and remanding for a new hearing "[t]hat part of the judgment of the trial court granting conditional release." *Id.* at 346. Grass filed an application for transfer to the Missouri Supreme Court, which was denied.

While the remand of his petition for conditional release was pending in Warren County Circuit Court, Grass filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, challenging only the denial of his petition for unconditional release. Citing *Foucha*, Grass argued that the absence of a finding that he currently suffers from a mental disease or defect—and, in fact, the presence of a finding by the circuit court that he currently does *not* suffer from such a disease or defect—required his unconditional release. A magistrate judge issued a Report and Recommendation concluding that Grass had exhausted his state remedies as to his unconditional release petition but recommending that the habeas petition be denied on the merits, since "the evidence considered by the Missouri appellate court reflected both that Petitioner had a current mental illness and that he was dangerous without monitoring."

-4-

After *de novo* review of the Report and Recommendation and Grass's objections, the district court issued an order dismissing the habeas petition for failure to exhaust state remedies. The district court noted that the circuit court's finding that Grass currently was not mentally ill, to which Grass had pointed in support of his petition, had been vacated by the court of appeals and remanded back to the circuit court. Because the remand of Grass's petition for conditional release was still pending in Warren County Circuit Court, the district court held that "the instant petition depends on future state court findings regarding the present condition of [Grass's] mental health. Therefore, there remains an undecided material factual issue, and the petition seeking unconditional release is not exhausted." *Grass v. Reitz*, 699 F. Supp. 2d 1092, 1100-01 (E.D. Mo. 2010) (footnote omitted). However, the district court also concluded that "reasonable jurists might find the Court's assessment . . . debatable or wrong" and granted a certificate of appealability "with regard to this Court's finding that the instant petition is not exhausted." *Id.* at 1101.

Grass filed this appeal, arguing that the district court erred in concluding that he had not exhausted his state remedies with respect to his petition for unconditional release. On January 10, 2011, after the briefs had been filed in this appeal, the Circuit Court of Warren County entered judgment denying Grass's claim for conditional release. The circuit court found that Grass had not shown that he was "not now and is not likely in the reasonable future to commit another violent crime," *Grass v. State*, No. 99-cv-155304, slip op. at 5 (Mo. Cir. Ct. Warren Cnty. filed Jan. 10, 2011), or that he was "unlikely to be dangerous to others while on conditional release," *id.* at 6. The circuit court found credible the expert testimony and diagnosis of a psychologist who stated that Grass's symptoms were in remission but "could re-emerge," *id.* at 4, but the court did not include an explicit finding as to whether Grass currently suffers from a mental disease or defect.[2]

---

[2] Whether, as the concurring opinion suggests, the circuit court's finding credible the psychologist's testimony and diagnosis constitutes an implicit finding that Grass currently suffers from a mental disease or defect is a question best left for the

At oral argument before this court, both Grass and the Respondent, Warden Reitz, indicated that no appeal was taken from the circuit court's decision, and Grass conceded that any such appeal now would be untimely. Because an appeal no longer would be possible, Warden Reitz conceded that Grass's claim now is exhausted, in that no further relief is available to him in state court. However, in light of Grass's failure to take a timely appeal of the circuit court's denial of his conditional release petition, Warden Reitz contended that Grass's federal claims have been procedurally defaulted. Grass argued that no default occurred, because he was not required to pursue his conditional release petition on remand in state court in order to exhaust a claim based on the denial of his unconditional release petition.

## II.    DISCUSSION

We review *de novo* the question whether a petitioner has failed to exhaust a claim raised in his § 2254 petition. *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001). Title 28 U.S.C. § 2254(b)(1)(A) prohibits a grant of habeas relief on behalf of a person in state custody unless that person has "exhausted the remedies available in the courts of the State." "The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001). The requirement prevents a federal court from granting a habeas petition based on a constitutional violation that could be redressed adequately by pursuing an avenue of state relief "still open to the habeas applicant at the time he files his application in federal court." *Humphrey v. Cady*, 405 U.S. 504, 516 (1972) (citing *Fay v. Noia*, 372 U.S. 391, 435 (1963)).

---

district court to decide in the first instance. *See United States v. Warren*, 149 F.3d 825, 828 (8th Cir. 1998) ("We will not generally consider issues that were not presented to the district court in the first instance.").

-6-

If a habeas petitioner has failed to present his federal claims in state court and untimeliness or some other state procedural hurdle now prevents him from doing so, that petitioner "meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). However, that petitioner's procedural default may constitute an "independent and adequate state ground" barring federal habeas relief, *see id.*, absent a showing of either cause and prejudice or actual innocence, *see Murray v. Carrier*, 477 U.S. 478, 485-96 (1986). In the instant case, Warden Reitz argues that Grass was required to pursue his petition for conditional release through a complete round of state-court review before his *Foucha* due-process claim was exhausted properly. Since Grass failed to appeal the circuit court decision denying his conditional release petition on remand, Warden Reitz contends that Grass's *Foucha* due-process claim now is procedurally defaulted. Despite the post-briefing developments in state court, then, the key question on appeal remains the one certified for our review: whether Grass was required to pursue his *Foucha* due-process claim in the context of the state-court remand of his conditional release petition in order to exhaust the claim properly. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts."). We conclude that he was not required to pursue the claim further.

Title 28 U.S.C. § 2254(c) provides that a petitioner has not exhausted state remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." "Although this language could be read to effectively foreclose habeas review by requiring a state prisoner to invoke *any possible* avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion." *O'Sullivan*, 526 U.S. at 844. Instead, the Supreme Court has held that § 2254(c) "requires only that state prisoners give state courts a *fair* opportunity to act on their claims." *Id.* To meet the requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

Although most of the cases defining the contours of the exhaustion requirement arise from challenges to state custody following criminal conviction, the Supreme Court's holding that exhaustion requires only a *fair* presentation that is satisfied "by invoking one complete round of the State's established appellate review process," *O'Sullivan*, 526 U.S. at 845, applies with equal force when a habeas petitioner seeks to challenge state custody pursuant to a civil commitment, *see Beaulieu v. Minnesota*, 583 F.3d 570, 575 (8th Cir. 2009). "To satisfy the exhaustion requirement, a person confined in the Missouri State Hospital must apply for release under section 552.040 before filing a petition for a writ of habeas corpus. Additionally, if the application for release is denied, the confined person must appeal to the Missouri Court of Appeals." *Kolocotronis v. Holcomb*, 925 F.2d 278, 279 (8th Cir. 1991) (internal citation omitted).[3]

In the instant case, Grass raised his *Foucha* due-process challenge in his petition, under section 552.040.5, for unconditional release, as well as in his appeal from the denial of that petition. Further, upon the appellate court's affirmance of the denial of unconditional relief, Grass filed an application for transfer to the Missouri

_____

[3] *Kolocotronis* goes on to hold that "if unsuccessful [in the Missouri Court of Appeals], [the confined person must] apply for transfer to the Missouri Supreme Court," *id.*, based on *Jones v. Ritterbusch*, 548 F. Supp. 89, 90 (W.D. Mo. 1982). In 2001, after both *Kolocotronis* and *Jones* were decided, the Missouri Supreme Court amended Supreme Court Rule 83.04 to provide that "[t]ransfer by this Court is an extraordinary remedy that is not part of the standard review process for purposes of federal habeas corpus review." *See Randolph v. Kemna*, 276 F.3d 401, 404 (8th Cir. 2002). Following this amendment, we have held that it is not necessary to apply for transfer to the Missouri Supreme Court to exhaust state remedies for purposes of § 2254. *See id.*

Supreme Court, even though such a step is not necessary in order to exhaust a claim for habeas review. *See Taylor v. Roper*, 561 F.3d 859, 861 n.2 (8th Cir. 2009). He therefore has fairly presented the claim he now asserts as a basis for federal habeas relief by invoking one complete round of Missouri's established appellate review process. *See Kolocotronis*, 925 F.2d at 279.

Although his petition for conditional release remained pending in Warren County Circuit Court when Grass filed his federal habeas petition, "a petitioner should not be barred from federal relief because of the mere possibility of success in additional state proceedings." *Rodgers v. Wyrick*, 621 F.2d 921, 924 (8th Cir. 1980). Nor was the district court barred from considering Grass's *Foucha* due-process challenge to the denial of his petition for unconditional release merely because the state litigation over his conditional release petition was ongoing when he filed his § 2254 petition. "[T]he pendency of parallel state court proceedings does not necessarily prevent federal courts from adjudicating § 2254 petitions containing fully exhausted federal claims." *Turnage v. Fabian*, 606 F.3d 933, 942 (8th Cir. 2010); *accord Nowaczyk v. Warden, N.H. State Prison*, 299 F.3d 69, 77 (1st Cir. 2002) (rejecting "the broad rule that federal courts must dismiss § 2254 petitions whenever the petitioner is in the process of adjudicating other, related claims in the state courts"); *Escobedo v. Estelle*, 650 F.2d 70, 74 (5th Cir.) (holding that petitioner's challenge to his conviction was exhausted even though "essentially the same claim" was pending in state court as part of a direct appeal from a later conviction and sentence enhanced on account of the conviction he sought to challenge), *modified on other grounds*, 655 F.2d 613 (5th Cir. 1981). Forcing Grass to pursue his *Foucha* due-process claim further in the context of his conditional release petition when he already has invoked it through one full round of state-court review of his unconditional release petition would require him to go above and beyond the fair presentation that satisfies the exhaustion requirement.

## III.  CONCLUSION

We conclude that because Grass pursued his *Foucha* due-process challenge to the denial of unconditional release through "one complete round of the State's established appellate review process," *O'Sullivan*, 526 U.S. at 845, he properly exhausted that claim, *see Kolocotronis*, 925 F.2d at 279.  Accordingly, we reverse the district court's dismissal of Grass's § 2254 petition and remand for further proceedings.

COLLOTON, Circuit Judge, concurring in the judgment.

The court's seemingly straightforward analysis of exhaustion of state remedies makes no mention of the elephant in the room – this court's problematic decision in *Revels v. Sanders*, 519 F.3d 734 (8th Cir. 2008).  The district court's ruling on exhaustion was premised on a dilemma created by *Revels*.  It was an understandable effort to avoid the inefficiency and affront to federal-state comity that would arise from duplicative and simultaneous federal and state court proceedings to determine whether Lloyd Grass presently suffers from a mental illness.  Although I agree with the court that Grass did exhaust state remedies on his claim for unconditional release, and that the judgment of dismissal must be reversed, the district court did have discretion to stay Grass's habeas petition pending the ongoing state court proceedings, which are now finished.  More fundamentally, I would reconsider *Revels*.

*Revels v. Sanders* involved a habeas petition by an insanity acquittee who sought unconditional release in Missouri.  The governing Missouri statute provides that "[n]o committed person shall be unconditionally released unless it is determined . . . that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others."  Mo. Rev. Stat. § 552.040.9.  While disclaiming any decision on the constitutionality of this statute, 519 F.3d at 744 n.9, *Revels* rendered a significant

aspect of § 552.040.9 effectively unenforceable by holding that a Missouri court unreasonably applied clearly established federal law when it denied unconditional release based on the statute. According to *Revels*, the state court unreasonably applied *Foucha v. Louisiana*, 504 U.S. 71 (1992), by requiring the petitioner to establish that he is not likely *in the reasonable future* to have a mental disease or defect that makes him dangerous. *Revels* held that it is unreasonable to permit continued confinement unless the state court finds "*present* mental illness." 519 F.3d at 743.

*Revels* produced an anomaly. The Supreme Court of Missouri has held that the statute on unconditional release is constitutional and consistent with *Foucha*. *State v. Revels*, 13 S.W.3d 293, 296 (Mo. 2000). A panel of this court held in *Revels v. Sanders* that a state court following the terms of the same Missouri statute unreasonably applies *Foucha*. The Missouri courts are bound to follow the state supreme court, *see State v. Rottinghaus*, 310 S.W.3d 319, 325 (Mo. Ct. App. 2010); the federal district courts are bound to follow the federal court of appeals. This case illustrates the problem. The Missouri courts denied Grass's petition for unconditional release based on his failure to establish that he was "not likely *in the reasonable future* to have a mental disease or defect rendering him *dangerous to the safety* of himself or others." *Grass v. State*, 220 S.W.3d 335, 340 (Mo. Ct. App. 2007). The federal district court was then required by this court's precedent to reject the state court's conclusion and to apply a different legal standard that required inquiry into Grass's *present* mental state. *See Revels v. Sanders*, 519 F.3d at 743 ("[T]he distinction between conditional and unconditional release is not material in light of *Foucha*'s governing legal principle.") (internal quotation omitted).

The district court recognized the quandary and arrived at a pragmatic solution. Because the state court record on the petition for *unconditional* release included no finding about whether Grass suffered from a present mental illness, and because there was an ongoing proceeding on Grass's petition for *conditional* release during which a state court likely would make that precise finding, the district court concluded that

-11-

it "should allow the state to make this finding in the first instance." *Grass v. Reitz*, 699 F. Supp. 2d 1092, 1101 n.4 (E.D. Mo. 2010). Although the chosen procedural device of dismissal was incorrect, the district court's basic conclusion was sound. The district court was not required to initiate a parallel evidentiary proceeding in federal court to determine whether Grass suffers from a present mental illness for purposes of unconditional release. Even where a habeas petition presents only an exhausted claim, a district court has discretion in unusual circumstances to stay the petition pending resolution of a related claim in state court. *See Nowaczyk v. Warden, N.H. State Prison*, 299 F.3d 69, 78 (1st Cir. 2002).

This case presents the sort of unusual situation in which that exercise of discretion is appropriate. When the Missouri Court of Appeals considered Grass's case in 2007, it did not anticipate that this court in 2008 would hold in *Revels v. Sanders* that a state court decision applying the Missouri statute is an unreasonable application of clearly established federal law. The doctrine of comity favors allowing the Missouri courts to decide in the first instance whether Grass meets the standard that *Revels v. Sanders* imposed. *Cf. Rose v. Lundy*, 455 U.S. 509, 518 (1982). Although the district court chose to dismiss the petition rather stay the action, either procedure would allow a state court to make an initial finding on Grass's present mental state. While this appeal was pending, a Missouri circuit court found that Grass presently suffers from a mental disease or defect,[4] and that finding should be available

---

[4] The Missouri court found credible the testimony of Dr. Richard Gowdy that although Grass's "original symptoms could be in full remission, the duration of the earlier symptoms suggests they could re-emerge." *Grass v. State*, No. 99CV155304, slip op. at 4 (Warren Cnty. Cir. Ct. Jan. 10, 2011); *see United States v. Weed*, 389 F.3d 1060, 1073 & n.7 (10th Cir. 2004) (upholding finding that insanity acquittee had a present mental defect even though he showed no symptoms); *United States v. Murdoch*, 98 F.3d 472, 476 (9th Cir. 1996); *State v. Huss*, 666 N.W.2d 152, 160 (Iowa 2003); *see also State v. Nash*, 972 S.W.2d 479, 483 (Mo. Ct. App. 1998) (ordering release of acquittee, but emphasizing that "this is not a case where the mental disease or defect was in remission or was currently asymptomatic").

to the district court on remand. *See* 28 U.S.C. § 2254(e)(1), (g); *Revilla v. Gibson*, 283 F.3d 1203, 1211 (10th Cir. 2002) ("[W]e see no reason why the mere fact that the finding was made in the context of a different issue should dilute its otherwise dispositive effect.").

The more fundamental question, however, is whether the decision of the Missouri Court of Appeals to reject Grass's claim for unconditional release should stand on its own terms. The district court was bound by *Revels v. Sanders* to reject the legal standard applied in the state court decision. But in holding that the Missouri Court of Appeals unreasonably applied clearly established federal law as enunciated in *Foucha v. Louisiana*, the panel in *Revels v. Sanders* did not consider the concurring opinion of Justice O'Connor, who cast the fifth and deciding vote in *Foucha*. The concurring opinion "emphasize[d] that the Court's opinion addresse[d] only the specific statutory scheme before [the Court], which broadly permit[ted] indefinite confinement of sane insanity acquittees in psychiatric facilities." 504 U.S. at 86-87 (O'Connor, J., concurring in part and concurring in the judgment). *Foucha* did not require the court "to pass judgment on more narrowly drawn laws," and Justice O'Connor specifically did "*not* understand the Court to hold that [a State] *may never* confine dangerous insanity acquittees *after they regain mental health*." *Id.* at 87 (emphasis added); *see also id.* at 87-88 ("It might therefore be permissible for Louisiana to confine an insanity acquittee who has regained sanity if . . . the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness."). If one of the five Justices in the *Foucha* majority understood the decision to mean that there was no hard-and-fast rule that a State must release a dangerous insanity acquittee once he regains mental health, then it is not an unreasonable application of clearly established federal law for a state court to believe the same. *See State v. Randall*, 532 N.W.2d 94, 96 (Wis. 1995) (explaining that "we read *Foucha* to permit the continued confinement of dangerous but sane acquittees in a mental health facility, so long as they are treated in a manner consistent with the purposes of their confinement"); *State v. Tooley*, 875 S.W.2d 110,

-13-

113 n.4 (Mo. 1994) (declining to decide "whether it would be constitutionally permissible to confine a sane person based on dangerousness alone," but noting that "Justice O'Connor did indicate in *Foucha* that this may be constitutional."); *cf. Revels v. Sanders*, 519 F.3d at 742 ("[T]he rule urged by the respondent, that a state may continue to hold an insanity acquittee who seeks unconditional release even if he *is not* presently mentally ill, must be rejected.").

The Supreme Court of Missouri, considering the constitutionality of Missouri's unconditional release statute, relied on the O'Connor concurrence to hold that the "statutory standard meets the holding of *Foucha*." *State v. Revels*, 13 S.W.3d at 296. *Revels v. Sanders* never addressed this point. This court should not continue to render a significant aspect of the Missouri unconditional release statute unenforceable on federal habeas review without considering the narrower view of *Foucha* expressed in the concurring opinion. If *Revels v. Sanders* is not reconsidered, and the Supreme Court does not intervene, then we appear destined for a string of cases in which the state courts continue to apply the Missouri statute to petitions for unconditional release, only to have federal habeas courts demand a different factual and legal inquiry.

_____